UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION, :

               Plaintiff,       :

          v.          :

AMIR WALDMAN, et al.,       :

                   :

            Defendants.
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

**MEMORANDUM AND ORDER**

17-CV-2088 (RMB) (KNF)

By an order, dated September 13, 2017, the assigned district judge ordered "[a]ll

discovery to be **expeditiously** completed by March 26, 2018." Docket Entry No. 51. On March

24, 2018, the Court granted the parties' joint request to extend all discovery deadlines to May 30,

2018. Docket Entry No. 111. Before the Court is the plaintiff's motion to modify the schedule,

pursuant to Fed. R. Civ. P. 16(b)(4), "to permit completion of remaining discovery abroad sought

through the Request for International Assistance Pursuant to the Hague Convention on the

Taking of Evidence Abroad in Civil or Commercial Matters, 28 U.S.C. § 1781, signed by Judge

Berman on November 28, 2017, and an Addendum thereto [the 'Letter of Request'] (Docs. 57

and 103, respectively), which has been stayed by the Jerusalem District Court pending resolution

of appeals by Defendants James Shaoul and two other witnesses," Ziv Sheleg ("Sheleg"), a

financial advisor to Amir Waldman and James Shaoul, and Yossi Azarzar ("Azarzar"), a friend

of James Shaoul's who "made unusual and remarkably timely purchases of Mobileye securities

at the same time as Dr. Wadlman and Roger Shaoul." Docket Entry No. 129. Defendant Amir

Waldman ("Waldman") opposes the motion.

### *Plaintiff's Contentions*

The plaintiff contends that it acted diligently by pursuing, "at considerable cost,"

document requests from and depositions of James Shaoul, Sheleg and Azarzar through the Letter

of Request. According to the plaintiff,

> [b]ecause the parties had agreed that the discovery cutoff would not apply to
> depositions in Israel and because Dr. Waldman's deposition was scheduled for
> November 8 but not certain to occur (the Commission had been trying to depose
> Dr. Waldman since March 2017), the commission waited to submit the Letter of
> Request until after November 8, when the Commission would learn at least the
> following: (1) whether the Commission would need the assistance of Israel courts
> to compel attendance of Dr. Waldman at his own deposition; and (2) additional
> information that might obviate the need for depositions of some witnesses or reveal
> the need for depositions of other witnesses in Israel. It was prudent to wait for this
> information, especially in light of the parties' agreement that the discovery cutoff
> would not apply to discovery in Israel and the fact that cost and time constraints
> counseled against more than one trip to Israel. The Commission submitted the
> Letter of Request for the Court's approval one week after Dr. Waldman's
> deposition (Doc. No. 55), which took place on November 8, 2017—more than six
> months after the Commission initially asked to take Dr. Waldman's deposition.
> Counsel for the Commission does not dispute that Dr. Waldman made his many
> requests for additional time to respond to discovery and appear at a deposition in
> good faith. Importantly, neither Dr. Waldman nor Roger Shaoul filed an opposition
> to the Letter of Request at the time the Commission made its submission.

The plaintiff asserts that, "for reasons outside of its control, the [plaintiff] was unable to obtain

all of the evidence it sought in the Letter of Request." The plaintiff contends that the trial is not

imminent, and "granting an exception to the discovery deadline for the Remaining Discovery in

Israel" will not prejudice the defendants "because it will not interfere with any scheduled

deadlines or the unscheduled dispositive motion briefing and will not bar any of the parties from

raising specific claims of prejudice once the witnesses become available in Israel." The plaintiff

maintains that: (a) the "testimony of James Shaoul goes to the heart of this case" because he "is

an upstream tipper of the other defendants"; (b) "[e]vidence from Mr. Sheleg will help confirm

or refute Dr. Waldman's explanation for his trading"; and (c) "[e]vidence from Mr. Azarzar will

2

help confirm or refute the evidence that James Shaoul possessed material nonpublic information about the tender offer." Moreover, "[d]enying the exception for Remaining Discovery will moot the orderly review contemplated by the Jerusalem District Court," while "comity and respect for the Jerusalem District Court will be served by an exception for the Remaining Discovery." In the conclusion of its memorandum of law, the plaintiff seeks an order: (1) "granting an exception to the discovery deadline for the Remaining Discovery in Israel"; and (2) "directing the parties to address the status of the Remaining Discovery after resolution of dispositive motions."

According to a declaration by Eric S. Sherby ("Sherby"), an attorney appointed by the February 20, 2018 order of the Jerusalem Magistrates Court, "to carry out this Court's Letter of Request and Addendum," James Shaoul, Sheleg and Azarzar moved to cancel the February 20, 2018 order. The motions were denied on April 12, 2018. On April 20, 2018, Sherby "filed a motion to compel production" requested in the Letter of Request from James Shaoul, Sheleg and Azarzar, which was granted, on April 24, 2018, by the Magistrates Court in Israel. However, James Shaoul, Sheleg and Azarzar filed "appeals in the Jerusalem District Court challenging the Magistrate[s] Court's rulings." According to Sherby, on April 29, 2018, "the Jerusalem District Court granted a request for stay of the evidence-taking as to Ziv Sheleg and Yossi Azarzar, pending resolution of their appeal" and, on May 2, 2018, "[t]he Jerusalem District Court issued an order staying the evidence-taking as to James Shaoul, pending resolution of his appeal." Sherby believes "that the Jerusalem District Court will soon assist this Court with the evidence-taking requested in the Letter of Request."

3

### *Defendant's Contentions*

Waldman contends that the plaintiff did not act with sufficient diligence warranting an

extension of the discovery order. The plaintiff waited eight months to initiate the Hague

Convention process in this case, although it

> understood the importance of overseas evidence to its case, knew identifying
> information of foreign witnesses (including for Mobileye directors and executives
> and James Shaoul) as early as March/April 2017, and inexplicably delayed the
> foreign evidence gathering process for several months. The Commission failed to
> act despite known delays associated with the Hague Convention in general and
> Israel in particular, both of which are well documented.

For example, the plaintiff did not "seek a longer time-frame to conduct foreign discovery in its

March 23, 2018 scheduling letter to the Court, and did not seek similar relief at the May 1, 2018

conference" with the Court. Since the plaintiff needed overseas evidence, but chose to wait, its

assertion that it was prudent in waiting for Waldman's deposition to initiate Hague Convention

process is meritless because the plaintiff

> always knew that its alleged direct tippee (James Shaoul) was located in Israel
> and it could have immediately started the Hague Convention process after
> charging this case. Hague Convention requests can be amended, which the
> Commission knows very well from its conduct in this case.

Moreover, on February 7, 2018, Waldman expressed his opposition to extending the discovery

deadline beyond March 26, 2018. Waldman notes the plaintiff's "failure to address its conscious

decision to close discovery on May 30, 2018, and its representation to the Court on May 1, 2018

that its discovery would 'certainly' be done by the cut-off date," despite knowing that James

Shaoul, Sheleg and Azarzar "refused to respond to the Hague Convention requests for months."

Waldman contends he would be prejudiced by extending the discovery schedule since the

plaintiff "seeks the open-ended ability to complete its belated foreign discovery requests, which

are now at the mercy of the Israel appellate courts." While the plaintiff does not provide an

4

anticipated date of resolution, "the preliminary appearance for these appeals is set to take place on December 19, 2018," as explained in a declaration by Zvi Gabbay ("Gabbay"), Waldman's counsel who is admitted to practice in Israel. Gabbay stated that, on June 13, 2018, he checked the publicly available docket for the pending appeals of James Shaoul, Sheleg and Azarzar, regarding the decisions of the Magistrates Court appointing Sherby to oversee the evidence gathering process in furtherance of the plaintiff's Letter of Request, "as captions 35030-04-18 and 42411-04-18 in the Jerusalem District Court." The preliminary appearance set for December 19, 2018, was noticed on June 7, 2018. Gabbay stated that, based on his experience, "it is likely that the earliest that these pending appeals will be resolved by the Jerusalem District Court would be at some time in March or April 2019." Gabbay noted that "the matter under appeal is a fundamental question of the application of Israeli law with regards to the Hague Convention on the Taking of Evidence" and, based on his experience, "the Israeli courts of appeal will likely require a considerable amount of time to reach a judgment in this regard, due to the potential long-term consequences of such a judgment."

Waldman asserts that delaying this case will be prejudicial to him, since he already suffered "significant, if not irreparable, reputational harm in Israel" and will impose "additional costs associated with participating in whatever discovery might eventually be allowed." Waldman maintains that he should be permitted to proceed to summary judgment on a closed record without further delay. Waiting for the Israel appeals to be resolved would prolong summary judgment briefing for another year, "an outrageous result considering the Commission hastily filed its Complaint a mere ten days after the tender offer that allegedly formed the basis of Dr. Waldman's alleged insider trades, and then leisurely took its time to investigate the facts." Waldman asserts that: (a) "the lack of a trial date does not undercut the need to proceed with

5

haste"; (b) the fact that extending discovery may result in obtaining relevant evidence is not

sufficient to establish good cause to extend the discovery deadline; and (c) evidence from the

witnesses in Israel will be cumulative. For example, concerning Sheleg, the plaintiff omitted

"the substance of the deposition testimony of another of Waldman's financial advisors, Moshe

Ruach," who testified, consistent with Waldman's position, "that he recommended Dr. Waldman

invest and maintain his position in Mobileye securities based on the merits of the investment and

not on any [material non-public information]." The plaintiff "proferred no evidence how the

relevance of Sheleg justifies the extension of a long-standing discovery order." Regarding

Azarzar, the plaintiff contends that his testimony will help determine whether James Shaoul

possessed material non-public information, but offers nothing in support of the contention.

Concerning James Shaoul, "while his testimony is relevant given how the Commission charged

the case," the plaintiff has known of the potential relevance of his testimony "since the inception

of the case in March 2017." The plaintiff's assertion, that an extension of the discovery deadline

is warranted "so the Israeli courts can resolve an issue with broader implications for the

commission's future cases," should be rejected as irrelevant to the plaintiff's instant motion.

### *Plaintiff's Reply*

The plaintiff contends that Waldman overreaches on the plaintiff's diligence. The

plaintiff maintains it "acted diligently in light of the parties' prior agreement that the discovery

cutoff not apply to discovery in Israel," because, on September 11, 2017, Waldman agreed that

depositions occurring abroad, pursuant to the Hague Convention on Evidence and further

discovery resulting from those depositions, are exempt from the fact discovery deadline

proposed jointly on that day. Waldman's attempt to renege on the stipulation should be rejected,

given that, during the September 13, 2017 conference with the assigned district judge, neither the

6

parties nor the judge raised "a concern or even [discussed] the stipulation for the fact discovery deadline—including the carve-out." The September 11, 2017 joint proposal of discovery deadlines shows that the plaintiff "appreciated the time necessary for completion of discovery in Israel." "If Judge Berman's orders actually did obviate the parties' Stipulation, equity should not allow Dr. Waldman to argue that the Commission lacked diligence because it relied on his representations." Moreover, the plaintiff asserts that it advised Waldman, in an e-mail message dated March 13, 2018: "We can only agree to a May 30, 20[1]8 cut-off for fact discovery that provides a 'good cause' mechanism to request more time if needed for the depositions in Israel." Thus, Waldman's argument that the plaintiff agreed to the May 30, 2018 deadline for all discovery should not be given any weight.

The plaintiff asserts that Waldman "cherry picks and relies on hindsight to second guess the Commission's diligence." The plaintiff did not learn that James Shaoul communicated with Waldman about his trading until June 30, 2017. Contrary to Waldman's argument, the plaintiff informed the Court, during the May 1, 2018 conference, that "[a] few minor procedural issues that we've been dealing with that have caused a little bit of uncertainty" occurred, although the plaintiff "did not elaborate further because no request for relief was ripe," since the plaintiff "believed on May 1 that the Jerusalem District Court may act quickly enough to allow completion of the stayed depositions by May 30." The plaintiff sought relief on May 25, 2018, "when it became clear that discovery would not be completed by May 30." Waldman "had an opportunity to correct the Commission during the May 1 conference if he thought the Commission was unreasonably optimistic, but did not do so." The May 1, 2018 conference "would have gone a very different direction had anyone known that a stay as to James Shaoul's deposition would be issued the next day." The plaintiff asserts that the requested modification

7

will not prejudice Waldman because: (1) "[t]here is no 'closed record'" on a motion for summary judgment "because respondents can (and typically do) submit declarations regardless of depositions"; and (2) "summary judgment is not a game," and if Waldman has a valid motion, he should file it regardless of what testimony is provided at the depositions of James Shaoul, Sheleg or Azarzar. Waldman should not use his "anticipated (and meritless) motion for summary judgment to preclude James Shaoul's testimony at trial under these circumstances."

In support of its reply, the plaintiff submitted a declaration by its attorney, Terry R. Miller ("Miller"), in which Miller stated that, in March and April 2018, she was in continuous contact by telephone with Sherby. On April 29, 2018, Miller learned from Sherby that "the Jerusalem District Court issued an order staying discovery as to two of five witnesses listed in the Letter of Request pending an appeal of the orders issued by the Jerusalem Magistrates Court." However, based on information from Sherby, Miller: (i) "understood that the primary argument raised in the appeal was not likely to succeed and that the Jerusalem District Court may act quickly because it was aware that the Commission was traveling to Israel the next day to take depositions that had not been stayed"; and (ii) believed "that the Jerusalem District Court may act quickly enough to allow completion of the stayed depositions by May 30."

### *Legal Standard*

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16 (b)(4). "[A] finding of 'good cause' depends on the diligence of the moving party." Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). Diligence "is not, however, the only consideration," and courts may consider other relevant factors, including any prejudice. Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).

8

*Application of Legal Standard*

The September 13, 2017 scheduling order directed, clearly and unambiguously, "[a]ll discovery to be **expeditiously** completed by March 26, 2018, (Fact & Expert)," with an emphasis on the word "expeditiously." Although the parties' September 11, 2017 letter proposing the case management plan contemplated specific deadlines for fact and expert discovery and included certain exceptions from the fact discovery deadline, namely "depositions occurring abroad" and "further discovery requests arising out of the depositions conducted abroad," none of these exceptions was approved by the assigned district judge during the September 13, 2017 conference or included in the September 13, 2017 scheduling order. Given that the September 13, 2017 scheduling order did not include the parties' proposed specific deadlines, namely: (a) December 15, 2017, for fact discovery, with the exception of "depositions occurring abroad" and "further discovery requests arising out of the depositions conducted abroad"; and (b) March 17, 2018, (which is 45 days after January 31, 2017, the date of the "Claiming Party's Expert Disclosures") for expert discovery, but directed that "[a]ll discovery be **expeditiously** completed by March 26, 2018," no basis existed for the plaintiff to believe that the September 13, 2017 scheduling order approved any exception to the clear and unambiguous March 26, 2018 deadline for completing, expeditiously, "[a]ll discovery."

The parties' March 23, 2018 joint request that the Court "enter an order modifying the Case Management Plan to extend the schedule for fact and expert discovery to May 30, 2018," indicated that "[t]he requested extension should allow the parties to complete discovery regarding expert witnesses and witnesses located in Israel." The Court granted the parties' request to extend the March 26, 2018 deadline for completing all discovery to May 30, 2018. The plaintiff now asserts that: (a) it informed Waldman, via the March 13, 2018 e-mail message,

"that a provision allowing for modification of the May 30 deadline upon good cause was necessary for the Commission to agree to the deadline"; and (b) the parties' March 23, 2018 letter stated that the parties will "address the court if good cause for future modification arises." The plaintiff's argument that, in its March 13, 2018 e-mail message to Waldman, it conditioned its agreement with Waldman to seek an extension of the deadline for completing all discovery from March 26, 2018, to May 30, 2018, on the "provision" requiring a showing of "good cause" to modify the schedule is meritless because any party may seek to modify a schedule for good cause, as contemplated by Fed. R. Civ. P. 16, and no order imposing a different standard for modifying the schedule exists in this case.

During the May 1, 2018 conference with the Court, after noting that the parties "have until the end of the month to complete your pretrial activities," the Court asked: "How are things progressing?" and received the following answer from the plaintiff's attorney:

> Your Honor, this is Terry Miller from the SEC. I just can report very briefly that things are progressing well from our end. We actually are in Israel right now, prepared to take what we hope is the last of all of the depositions we'll need in this case. A few minor procedural issues that we've been dealing with that have caused a little bit of uncertainty, but we're very hopeful and anticipate being done with our discovery within the next week or, I guess, within the next week or two, but certainly by the cutoff date.

The plaintiff did not inform the Court, during the May 1, 2018 conference, while the plaintiff was "in Israel right now, prepared to take what we hope is the last of all of the depositions we'll need in this case," that: (a) James Shaoul, Sheleg and Azarzar filed motions to cancel the February 20, 2018 order of "the Magistrates Court" in Israel, appointing Sherby to oversee the evidence-gathering pursuant to the Letter Request; (b) on April 12, 2018, those motions were denied; (c) Sherby filed a motion to compel on April 20, 2018; (d) on April 24, 2018, Sherby's motion to compel was granted; and (e) on April 29, 2018, "the Jerusalem District Court granted a

10

request for stay of the evidence-taking as to Ziv Sheleg and Yossi Azarzar, pending resolution of their appeal." The plaintiff in its reply contends that, during the May 1, 2018 conference, it "acknowledged the procedural issues and uncertainty but did not elaborate further because no request for relief was ripe." The plaintiff's assessment, on May 1, 2018, that any request to extend the May 30, 2018 deadline to complete all discovery was not "ripe," while: (1) knowing, on May 1, 2018, that on April 29, 2018, "the Jerusalem District Court issued an order staying discovery as to two of the five witnesses listed in the Letter of Request pending an appeal of the orders issued by the Jerusalem Magistrates Court"; and (2) choosing not to "elaborate" or inform the Court, on May 1, 2018, about the relevant legal proceedings in Israel, was unreasonable and made at the plainitff's own peril. It is never reasonable to keep the Court in the dark about ongoing court proceedings abroad resulting from the Letter of Request issued in this action, and it is especially unreasonable to do so when the discovery deadline, which extended a clear and unambiguous September 13, 2017 directive that all discovery be "expeditiously completed" by March 26, 2018, is fast approaching and the party conducting discovery abroad, pursuant to the Letter of Request issued in this case, knows that discovery abroad has been stayed by a foreign court.

The plaintiff attempts to shift the burden of informing the Court about issues concerning the plaintiff's discovery in Israel on to Waldman, contending that he did not: (1) "raise a concern about or even discuss," during the September 13, 2017 conference, the exception to the fact discovery deadline requested in the parties' September 11, 2017 letter; and (2) "correct the Commission during the May 1 conference if he thought the Commission was unreasonably optimistic" about its representation to the Court that it anticipates completing all discovery by the

11

May 30, 2018 deadline. It is not clear what obligation or basis Waldman would have to raise any concern about the discovery that the plaintiff seeks to obtain.

The plaintiff argues it acted diligently, focusing on its pursuit of the Letter of Request. However, the plaintiff's diligence must be assessed based on the circumstances of this case and not solely with respect to the plaintiff's pursuit of the Letter of Request. Sherby did not state in his declaration when Sheleg, Azarzar and James Shaoul made motions "to cancel (entitled 'motion to dismiss')" the February 20, 2018 order by the Magistrates Court appointing Sherby to oversee the evidence-gathering process. However, Miller was in continuous contact with Sherby in March and April 2018 and she knew about the court proceedings in Israel. Labeling the court proceedings in Israel, including the April 29, 2018 stay of discovery pursuant to the Letter of Request in this action pending appeals from the orders issued by the Jerusalem Magistrates Court, as "[a] few minor procedural issues that we've been dealing with that have caused a little bit of uncertainty," and representing to the Court, despite those "procedural issues," that the plaintiff anticipates "being done with our discovery . . . certainly by the cutoff date" demonstrates a lack of diligence under the circumstances because the plaintiff did not take seriously the discovery impediments it confronted in Israel and it relied, unjustifiably and without a reasonable basis, on its: (i) understanding "that the primary argument raised in the appeal was not likely to succeed and that the Jerusalem District Court may act quickly because it was aware that the Commission was traveling to Israel the next day to take depositions that had not been stayed"; and (ii) belief "that the Jerusalem District Court may act quickly enough to allow completion of the stayed depositions by May 30."

Plaintiff is correct that "summary judgment motions are not a game." To permit summary judgment motions to be made while discovery is pending would be a waste of the

12

parties' time and judicial resources, in contravention of Rule 1 of the Federal Rules of Civil Procedure. To extend time for the plaintiff to complete its discovery in Israel without setting any definite end date in the future would be extremely prejudicial to Waldman. Even assuming that: (1) on December 19, 2018, when the preliminary appearances are noticed to occur, the Jerusalem District Court issues its decisions concerning the pending appeals in connection with the plaintiff's Letter of Request; and (2) those decisions are favorable to the plaintiff, the remaining depositions and, potentially, any further discovery that may be requested as a result of the depositions in Israel, would continue well into 2019. Such a delay, in the circumstance of this case, is not insignificant and would prejudice Waldman by prolonging the final resolution of this action and imposing additional costs associated with the remaining discovery, the finality and the scope of which is unknown at this time and may remain unknown until well into 2019, if at all. The Court finds that the plaintiff's lack of diligence, and the prejudice that would attend Waldman, militate against a finding of good cause to modify the schedule.

### *Conclusion*

For the foregoing reasons, the plaintiff's motion to modify the schedule, Docket Entry No. 129, is denied.

Dated: New York, New York
      July 5, 2018

SO ORDERED:

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

13